**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| LIFTWERX USA INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. _____ |
| | ) | |
| LIFTRA IP APS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT OF NONINFRINGEMENT

1.     This action seeks a declaratory judgment of noninfringement of two related patents. Plaintiff LiftWerx USA Inc. ("Plaintiff" or "LiftWerx USA"), by and through its undersigned counsel, alleges as follows:

2.     LiftWerx USA and its related corporate entities (the "LiftWerx Group") specialize in up-tower wind turbine corrective repairs using novel lifting solutions.  LiftWerx USA's up-tower lifting technology lowers the overall cost of large corrective repairs on wind turbines by exchanging major components without the need for large traditional cranes.  LiftWerx USA operates throughout the United States, and related and licensed companies in the LiftWerx Group operate in Canada and Europe.

3.     One of LiftWerx USA's primary competitors is Liftra USA Inc. ("Liftra USA").  On information and belief, Liftra USA and its related companies also operate throughout the United States, Canada, and Europe.  Liftra IP ApS ("Liftra" or "Defendant"), a Danish company associated with Liftra USA, purports to hold United States and international patents for technology related to up-tower wind turbine repairs.

4.    Liftra and its affiliated entities have engaged in an international litigation campaign against the LiftWerx Group, including LiftWerx USA's related companies and licensees, including by alleging patent infringement in Canada and Europe on counterpart patents to those in suit. LiftWerx USA brings this case to establish that it does not infringe Liftra's related U.S. patents.

## THE PARTIES

5.    LiftWerx USA is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 2510 Dickinson Avenue, Dickinson, Texas, 77539.

6.    On information and belief, Liftra is a company organized and existing under the laws of Denmark, with its principal place of business at Stationsmestervej 81, 9200 Aalborg, Denmark.

## THE PATENTS-IN-SUIT

7.    U.S. Patent No. 10,378,518 (the "'518 Patent"), titled "Main Shaft Fixture," issued on August 13, 2019.  The application that led to the '518 Patent, U.S. Patent Application No. 15/517,288, was filed as PCT/DK2015/000040 on October 6, 2015.  A true and correct copy of the '518 Patent is attached hereto as Exhibit A.

8.    On information and belief, Liftra purports to be the owner of all right, title, and interest in the '518 Patent.

9.    U.S. Patent No. 12,104,578 (the "'578 Patent" and together with the '518 Patent, the "Patents-in-Suit"), titled "Main Shaft Fixture," issued on October 1, 2024.  The application that led to the '578 Patent, U.S. Patent Application No. 18/420,859 was filed on January 24, 2024 as a continuation of U.S. Patent Application No. 16/452,617, which was filed on June 26, 2019 and was a divisional of U.S. Patent Application No. 15/517,288, which was filed as

PCT/DK2015/000040 on October 6, 2015, and issued as the '518 Patent on August 13, 2019. A true and correct copy of the '578 Patent is attached hereto as Exhibit B.

10.    On information and belief, Liftra purports to be the owner of all right, title, and interest in the '578 Patent.

## JURISDICTION AND VENUE

11.    This action for a declaratory judgment of noninfringement of patent rights arises under the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. and the patent laws of the United States, 35 U.S.C. § 100 et seq., including, but not limited to, 35 U.S.C. § 271.

12.    This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1332, 1338(a), and 2201(a) and 2202; and 35 U.S.C. § 271.

13.    This Court has personal jurisdiction over Defendant Liftra under 35 U.S.C. § 293. On information and belief, Liftra sought and has the privileges and protections of patent ownership in the United States.  Defendant Liftra is the owner assignee of record of the Patents-in-Suit and is a "patentee not residing in the United States" under 35 U.S.C. § 293. Liftra has not filed with the United States Patent and Trademark Office ("USPTO") any written designation stating the name and address of a person residing within the United States on whom may be served process or notice of proceedings affecting the Patents-in-Suit or rights thereunder. 35 U.S.C. § 293. Liftra has purposefully availed itself of the privileges of patent ownership through its contacts with the USPTO in this judicial district.

14.    Venue is proper in this judicial district under 28 U.S.C. § 1391, 1400(b) and 35 U.S.C. § 293. Defendant Liftra is a foreign corporation not resident in the United States and may be sued in any judicial district.

## THE CONTROVERSY BETWEEN THE PARTIES

15.  As detailed below, Liftra and its affiliates have commenced proceedings in various jurisdictions around the world against members of the LiftWerx Group, including LiftWerx USA's related corporate entities and their licensees, alleging that members of the LiftWerx Group have infringed European and Canadian counterpart patents to the Patents-in-Suit.

### The "European Seizure Proceedings":

16.  On September 20, 2024, Liftra made a Request to the District Court of the Hague for permission to seize evidence of alleged infringement of European Patent No. 3,204,639 B1 (the "EP '639 Patent") from Liftoff-MCE BV, Meemaken BV, Eager.one BV, Kenz Cranes BV and Kenz Crane Services BV (the "European Seizure Request").

17.  LiftWerx USA is related to LiftWerx Solutions Inc. and Meemaken BV.  Meemaken BV holds an indirect, minority ownership interest in LiftWerx USA; Meemaken BV also holds a 17.5% ownership interest in LiftWerx Solutions Inc.  Further, Meemaken BV holds an indirect, non-controlling ownership interest in Liftoff-MCE BV ("Liftoff"), a licensee of LiftWerx Solutions Inc., and a controlling ownership interest in the other entities named in the European Seizure Request.

18.  The EP '639 Patent, titled "Main Shaft Fixture, issued on July 12, 2022.  The application that led to the EP '639 Patent, Application No. 15848694.4, was filed on June 10, 2015, and is a National Stage Entry of PCT/DK2015/000040.  As described in more detail below, the EP '639 Patent is a European counterpart of the '518 Patent, which is the parent of the '578 Patent.

19.  On information and belief, Liftra purports to be the owner of all right, title, and interest in the EP '639 Patent.

20.    The European Seizure Request was accompanied by a Statement of Per Eske Fenger (the "Fenger Statement"), attached hereto as Exhibit C.

21.    The Fenger Statement alleges that "LiftWerx is in possession of … main shaft fixtures with rotor locks to service GE 1.5/1.6 MW turbines which are copies of the Liftra LT1000 systems" and that "[LiftWerx] develops and produces/assembles these main shaft fixtures with rotor locks in the Netherlands…." *Id.*, at ¶ 2.

22.    The Fenger Statement further alleges that "[f]rom the Netherlands, the LiftWerx products are transported to various parts of Europe and shipped to other parts of the world, ***including the US*** …, where they are used to perform services on wind turbines." *Id.*, at ¶ 26 (emphasis added).

23.    On September 27, 2024, Liftra obtained an *ex parte* seizure order from a Preliminary Relief Judge of the District Court of The Hague.

24.    A seizure was executed in November 2024 on Kenz Cranes BV and Kenz Crane Services (together, "Kenz"), and Liftoff.[1]

**The "European Access Proceedings":**

25.    The documents seized in the European Seizure Proceedings are currently held by a bailiff, pursuant to Dutch law.

26.    On March 21, 2025, Liftra ApS brought an application to gain access to the seized information.  On July 2, 2025, the Dutch District Court dismissed Liftra ApS's access proceeding, which Liftra ApS appealed on July 29, 2025, and remains pending.

---

[1] A seizure was not executed on either of Meemaken BV or Eager.one BV, which may have been due in part to a procedural error by Liftra.

***The "European Infringement Proceedings":***

27.    On May 16, 2025, Liftra filed a patent infringement action against Kenz and Liftoff (collectively, the "LiftWerx European Defendants") alleging infringement of the EP '639 Patent (the "European Infringement Complaint")

28.    The European Infringement Complaint alleges that the "LiftWerx Group" has operations in the United States.  *See* European Infringement Complaint, at 7.

***The "Canadian Infringement Proceedings":***

29.    On July 18, 2025, Liftra, Liftra APS, and Liftra USA Inc. filed a Claim in Federal Court in Canada (the "Canadian Infringement Complaint") against LiftWerx Solutions Inc., LiftWerx EU (CAN) Holdings Inc. and Liftoff (collectively the "LiftWerx Canada Defendants"), styled *Liftra IP APS v. LiftWerx Solutions Inc.*, No. T-2499-25 (Fed. Ct. Can.) (the "Canadian Infringement Proceedings"), and alleging infringement of Canadian Patent No. 2,963,016 (the "CA '016 Patent").[2]

30.    The CA '016 Patent, titled "Main Shaft Fixture," issued on March 31, 2020.  The application that led to the CA '016 Patent, CA2963016A, was filed on October 6, 2015, and is a National Stage Entry of PCT/DK2015/000040.  As described in more detail below, the CA '016 Patent is a Canadian counterpart of the '518 Patent, which is the parent of the U.S. '578 Patent.

31.    On information and belief, Liftra purports to be the owner of all right, title, and interest in the CA '016 Patent.

---

[2] On October 9, 2025 Liftra, Liftra APS, and Liftra USA Inc. filed an Amended Claim in the Canadian Infringement Proceedings removing LiftWerx EU (Can) Holdings Inc. and Liftoff-MCE BV as defendants.

32.    In the Canadian Infringement Proceedings, Liftra alleges that the LiftWerx Canada Defendants "infringed claims 1 to 9 of Canadian Patent No. 2,963,016."  Canadian Infringement Complaint, at ¶1(a).

33.    In the Canadian Infringement Complaint, Liftra alleges that the LiftWerx Canada Defendants "replicated and/or recreated Liftra's main shaft fixtures [of Liftra LT1000 cranes] in order to develop additional main shaft fixtures, which are encompassed by the claims of the [CA ']016 Patent, in order to perform maintenance on a large numbers of wind turbines, *including* in Canada."  Canadian Infringement Complaint, at ¶ 26 (emphasis added).

34.    In the Canadian Infringement Complaint, Liftra alleges that the LiftWerx Canada Defendants "knowingly influences [their] suppliers, partners, distributors and/or customers to make, use, sell and/or operate the above-described LiftWerx Products to obtain the benefits described in the [CA ']016 Patent and/or to make, construct, import, export, manufacture, market, advertise, promote, distribute, offer for sale, sell and/or use the LiftWerx Products, including in Canada, in accordance with the Asserted Claims of the [CA ']016 Patent."  Id. at ¶ 30.

*__Liftra's Asserted European EP '639 Patent is Closely Related to Liftra's United States '518 and '578 Patents:__*

35.    The European Seizure Proceedings, the European Access Proceedings, and the European Infringement Proceedings each assert the EP '639 Patent.

36.    The EP '639 Patent is a European counterpart of the U.S. '518 Patent.

37.    The EP '639 Patent is closely related to the '518 Patent.

38.  The specifications of the '518 Patent and '578 Patent are similar to the specification

of the EP '639 Patent.[3]

39.  Claims 2-8 of the '518 Patent are substantially similar to Claims 1, 3-4, 6-8, and 10,

respectively, of the EP '639 Patent.[4]

40.  For example, Claim 2 of the '518 Patent is substantially similar to Claim 1 of the EP

'639 Patent (differences shown in underline):

| '518 Patent, Claim 2 | EP '639 Patent, Claim 1 |
|---|---|
| A main shaft fixture (10) for fixation of a main shaft (4) on a wind turbine during execution of installation and repair work on heavy parts of a wind turbine, where the fixture (10) is divided up into a number of sections for mounting on stable structural parts (2) in a nacelle in a wind turbine, including the bottom frame (2) of the nacelle, wherein the main shaft fixture (10) comprises at least three radially displaceable pressure mandrels (18), substantially symmetrical located around a centre axis (11) of the main shaft, first ends of said pressure mandrels (18) face the main shaft (4) and are furnished with a tap shoe (20), and wherein said pressure mandrels (18) are displaceable between a passive, withdrawn lockable position where the tap shoes (20) are configured to be located at a distance from the surface of the main shaft (4) and an advanced lockable position where the tap shoes (20) are configured to be engaged with the main shaft (4), further comprising a rotor lock (24) for fixation of the rotor (8) of the wind turbine, wherein the rotor lock (24) is comprised of a flange | Main shaft fixture (10) for fixation of a main shaft (4) on a wind turbine during execution of installation and repair work on heavy parts of a wind turbine, where the fixture (10) is divided up into a number of sections for mounting on stable structural parts (2) structural parts in a nacelle in a wind turbine, including the bottom frame (2) of the nacelle, wherein the main shaft fixture (10) comprises at least three radial displaceable pressure mandrels (18), substantially symmetrical located around the centre axis (11) of the main shaft, the ends of said pressure mandrels (18) facing the main shaft (4) are furnished with a tap shoe (20), and said pressure mandrels (18) being displaceable between a passive, withdrawn lockable position where the tap shoes (20) are configured to be located at a distance from the surface of the main shaft (4) and an active, advanced lockable position where the tap shoes (20) are configured to be engaged with the main shaft (4), and wherein the main shaft fixture comprises a rotor lock (24) for fixation of the rotor (8) of the wind turbine, and that the |

---

[3] *See* Exhibits D and E, attached hereto, comparing the specifications of the '518 Patent and '578 Patent, respectively, to the specification of the EP '639 Patent.

[4] *See* Exhibit F, attached hereto, comparing Claims 2-8 of the '518 Patent to Claims 1, 3-4, 6-8, and 10 of the EP '639 Patent.

| | |
|---|---|
| element, with a bolt circle geometry (26) that corresponds to a bolt circle geometry (28) on the rotor, said flange element (24) being fastened at the ends to a first end (21) of two first beam-shaped brackets (22) extending parallel with each other, and being located on each side of the main shaft, said beam shaped brackets (22) forming part of the main shaft fixture, and where a second end (23) of the brackets (22) is pivotally mounted with horizontally oriented bolt connections (30) on other brackets (39) that form parts of the main shaft fixture (10) and which are anchored on the bottom frame (2) of the nacelle. | rotor lock (24) consists of a flange element, whose bolt circle geometry (26) corresponds to a bolt circle geometry (28) on the rotor, said flange element (24) being fastened at the ends to a first end (21) of two first beam-shaped brackets (22) extending parallel with, and on each side of the main shaft, said beam shaped brackets (22) belonging to the main shaft fixture, and where a second end (23) of the brackets (22) is pivotally mounted with horizontally oriented bolt connections (30), on other brackets (39) belonging to the main shaft fixture (10), which are adapted to be anchored on the bottom frame (2) of the nacelle. |

### *Liftra's Asserted Canadian CA '016 Patent is Closely Related to Liftra's United States '518 and '578 Patents:*

41.    The Canadian Infringement Proceedings assert the CA '016 Patent.

42.    The CA '016 Patent is a Canadian counterpart of the '518 Patent.

43.    The CA '016 Patent is closely related to the '518 Patent.

44.    The specifications of the '518 Patent and '578 Patent are similar to the specification

of the CA '016 Patent.[5]

45.    Claims 1-8 of the '518 Patent are substantially similar to Claims 1-2, 4-5, 7-9, and 3,

respectively, of the CA '016 Patent,[6] which are the "Asserted Claims of the [CA ']016 Patent" in

the Canada Litigation.

_____

[5] *See* Exhibits G and H, attached hereto, comparing the specifications of the '518 Patent and '578 Patent, respectively, to the specification of the CA '016 Patent.

[6] *See* Exhibit I, attached hereto, comparing Claims 1-7 of the '518 Patent to Claims 1-2, 4-5, 7-9, and 3 of the CA '016 Patent.

46.   For example, Claim 1 of the '518 Patent is substantially similar to Claim 1 of the

CA '016 Patent (differences shown in underline):[7]

| '518 Patent, Claim 1 | CA '016 Patent, Claim 1 |
|---|---|
| 1. A main shaft fixture (10) for fixation of a main shaft (4) on a wind turbine during execution of installation and repair work on **heavy parts of a** wind turbine, where the fixture (10) is divided **up** into a number of sections for mounting on **stable** structural parts (2) in a nacelle in **a** wind turbine, including **the** bottom frame (2) of the nacelle, wherein the main shaft fixture (10) comprises at least three radially displaceable pressure mandrels (18), substantially symmetrical located around a centre axis (11) of the main shaft, first ends of said pressure mandrels (18) face the main shaft (4) and are furnished with a tap shoe (20), and wherein said pressure mandrels (18) are displaceable between a passive, withdrawn **lockable** position where the tap shoes (20) are configured to be located at a distance from the surface of the main shaft (4) and an advanced lockable position where the tap shoes (20) are configured to be engaged with the main shaft (4), further comprising a rotor lock (24) for fixation of the rotor (8) of the wind turbine, further comprising one of a multi-part needle bearing, roller bearing, or ball bearing (46) comprised of a multi-part inner ring (48) fastened to the main shaft (4), and a therewith cooperating multi-part outer ring (50) comprised of bowed sub-segments (52) corresponding to the number of tap shoes, mounted on the opposing side of the tap shoes (20) facing the inner ring (48), which in the advanced active position of the pressure mandrels form the outer ring (50) at a distance from the outer periphery of the multi-part inner ring (48), and where **a** plurality of needle rollers, rollers, or balls (54) | 1. A**.** main shaft fixture for fixation of a main shaft on a wind turbine during execution of installation and repair work on **the** wind turbine, where the fixture is divided into a number of sections for mounting on structural parts in a nacelle in **the** wind turbine, including **a** bottom frame of the nacelle, wherein the main shaft fixture comprises at least three radially displaceable pressure mandrels, substantially symmetrical located around a centre axis of the main shaft, first ends of said pressure mandrels face the main shaft and are furnished with a tap shoe, and wherein said pressure mandrels are displaceable between a passive, withdrawn position where the tap shoes are configured to be located at a distance from the surface of the main shaft and an advanced lockable position where the tap shoes are configured to be engaged with the main shaft, further comprising a rotor lock for fixation of the rotor of the wind turbine, further comprising one of a multi-part needle bearing, roller bearing, or ball bearing comprised of a multi-part inner ring fastened to the main shaft, and a therewith cooperating multi-part outer ring comprised of bowed sub-segments corresponding to the number of tap shoes, mounted on the opposing side of the tap shoes facing the inner ring, which in the advanced active position of the pressure mandrels form the outer ring at a distance from the outer periphery of the multi-part inner ring, and where plurality of needle |

---

[7] Differences attributable only to numerical labeling within the claim language are not shown.

| | |
|---|---|
| are arranged between the inner ring (48) and the outer ring (50), and where means are present for retaining the needles, rollers, or balls (54) in position between the inner ring (48) and outer ring (50). | rollers, rollers, or balls are arranged between the inner ring and the outer ring, and where means are present for retaining the needles, rollers, or balls in position between the inner ring and outer ring. |

### *Liftra Threatens Actual and Imminent Injury to LiftWerx USA:*

47.     The European Seizure Proceedings, the European Access Proceedings, the European Infringement Proceedings, and the Canadian Infringement Proceedings were filed against LiftWerx Solutions Inc., a commonly owned corporate relative of Plaintiff LiftWerx USA, as well as other related entities in the LiftWerx Group.

48.     The European Seizure Request (which led to the European Access Proceedings) was made against Meemaken BV, which holds a 17.5% ownership interest in LiftWerx Solutions Inc.; and Liftoff-MCE BV, a corporate child of Meemaken BV and a licensee of LiftWerx Solutions Inc.[8]

49.     The European Infringement Complaint in the European Infringement Proceedings was filed against Liftoff, a licensee of LiftWerx Solutions Inc.[9]

50.     The Canadian Infringement Complaint in the Canadian Infringement Proceedings was filed against members of the LiftWerx Group, including LiftWerx Solutions Inc., a commonly owned corporate relative of Plaintiff LiftWerx USA; and LiftWerx EU (CAN) Holdings Inc. and Liftoff, licensees of LiftWerx Solutions Inc.

---

[8] The European Seizure Request was also made against Eager.one BV; Kenz Cranes BV; and Kenz Crane Services BV.  Meemaken BV is the corporate parent of Eager.one BV, and KenzFigee Group.  KenzFigee Group is the corporate parent of Kenz Cranes BV and Kenz Crane Services BV.

[9] The European Infringement Complaint was also made against Kenz Cranes BV and Kenz Crane Services BV.

51.    Liftra's allegations in the European Seizure Proceedings, the European Access Proceedings, the European Infringement Proceedings, and the Canadian Infringement Proceedings, each of which includes or is related to an allegation of infringement of one or more claims of the counterpart EP '639 Patent or the counterpart CA '016 Patent by an entity related to LiftWerx USA, threaten actual and imminent injury to LiftWerx USA that can be redressed by judicial relief, and that injury is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

52.    For example, the Fenger Statement alleges that supposedly infringing "LiftWerx products are transported to various parts of Europe and shipped to other parts of the world, ***including the US*** …, where they are used to perform services on wind turbines." *Id.*, at ¶ 26 (emphasis added).

53.    Such injury includes, among other things, the assertion that LiftWerx USA is infringing one or more claims of the '518 Patent and '578 Patent by virtue of its actions in making, using, importing, selling, or offering for sale LiftWerx USA's up-tower lifting technologies, solutions, products and services; uncertainty as to whether the making, using, importing, selling, or offering for sale of LiftWerx USA's up-tower lifting technologies, solutions, products and services are free from infringement claims based on the '518 Patent and '578 Patent; and a cloud over LiftWerx USA's efforts to make, use, import, sell, or offer for sale LiftWerx USA's up-tower lifting technologies, solutions, products and services.

54.    Absent a declaration of noninfringement, based on Liftra's and its affiliates' course of conduct in asserting infringement of the counterpart EP '639 Patent and CA '016 Patent against members of the LiftWerx Group and corporate relatives of LiftWerx USA, LiftWerx USA is rationally apprehensive that Liftra will wrongfully assert the '518 Patent and '578 Patent against LiftWerx USA, thereby causing LiftWerx USA irreparable injury and damage.

55.    Thus, an actual and justiciable controversy exists between Liftra and LiftWerx USA as to the '518 Patent and '578 Patent.

**FIRST COUNT FOR RELIEF**
**(DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '518 PATENT)**

56.    LiftWerx USA repeats, re-alleges, and incorporates by reference the preceding paragraphs as if fully set forth herein.

57.    An actual and justiciable controversy exists between the Parties with respect to the '518 Patent.

58.    LiftWerx USA is entitled to a declaratory judgment that the '518 Patent is not infringed.

59.    LiftWerx USA does not directly or indirectly infringe any claims of the '518 Patent, including claims 1-8, literally or under the doctrine of equivalents, by making, using, offering to sell, selling, or importing into the United States any products or services that practice any claims of the '518 Patent, including LiftWerx USA's up-tower lifting technologies, solutions, products and services.

60.    Without limiting the grounds of non-infringement that will be asserted in this action, and by way of a nonlimiting example only, LiftWerx USA's up-tower lifting technologies, solutions, products, and services do not infringe any claims of the '518 Patent because they do not include main shaft fixtures comprising:

    i.    at least three radially displaceable pressure mandrels;

    ii.    at least three radially displaceable pressure mandrels substantially symmetrically located around a centre axis of a main shaft;

13

iii.   pressure mandrels where the end of the pressure mandrel facing the main shaft is furnished with a tap shoe;

iv.   pressure mandrels that are displaceable between a passive, withdrawn lockable position where the pressure mandrels' tap shoes are configured to be located at a distance from the surface of the main shaft;

v.   a rotor lock for fixation of the rotor of a wind turbine;

vi.   a rotor lock for fixation of the rotor of the wind turbine comprising a multi-part needle bearing, roller bearing, or ball bearing;

vii.   a rotor lock for fixation of the rotor of the wind turbine comprising a multi-part outer ring comprised of bowed sub-segments;

viii. a rotor lock for fixation of the rotor of the wind turbine comprising a plurality of needle rollers, rollers, or balls are arranged between an inner ring and an outer ring;

ix.   a rotor lock for fixation of the rotor of the wind turbine comprising a means for retaining the needles, rollers, or balls in position between an inner ring and an outer ring;

x.   mounting facilities for a lightweight crane;

xi.   pressure mandrels that are provided with actuators for displacing and retaining tap shoes in a passive position and an active position;

xii.   pressure mandrels that are provided with actuators for displacing and retaining tap shoes alternatively in a selectable position between a passive and an active position;

xiii. slide plates;

xiv. slide plates located between the opposing sides of the surface of a main shaft and tap shoes;

14

xv.  a multi-part slide plate;

xvi. an actuator located nearest a main shaft fixture rotor lock between the bottom frame of a nacelle and an adjacent side of a first beam-shaped bracket facing the bottom frame; or

xvii. an actuator that is displaceable between a first passive outer position and an active outer position by which a main shaft fixture rotor lock flange element is displaced vertically.

61.    Claim 1 of the '518 Patent is not infringed, either directly or indirectly, contributorily or otherwise, by LiftWerx USA or by any person in connection with their activities related to LiftWerx USA's up-tower lifting technologies, solutions, products and services.

62.    Claim 2 of the '518 Patent is not infringed, either directly or indirectly, contributorily or otherwise, by LiftWerx USA or by any person in connection with their activities related to LiftWerx USA's up-tower lifting technologies, solutions, products and services.

63.    Claim 3 of the '518 Patent is not infringed, either directly or indirectly, contributorily or otherwise, by LiftWerx USA or by any person in connection with their activities related to LiftWerx USA's up-tower lifting technologies, solutions, products and services.

64.    Claim 4 of the '518 Patent is not infringed, either directly or indirectly, contributorily or otherwise, by LiftWerx USA or by any person in connection with their activities related to LiftWerx USA's up-tower lifting technologies, solutions, products and services.

65.    Claim 5 of the '518 Patent is not infringed, either directly or indirectly, contributorily or otherwise, by LiftWerx USA or by any person in connection with their activities related to LiftWerx USA's up-tower lifting technologies, solutions, products and services.

66. Claim 6 of the '518 Patent is not infringed, either directly or indirectly, contributorily or otherwise, by LiftWerx USA or by any person in connection with their activities related to LiftWerx USA's up-tower lifting technologies, solutions, products and services.

67. Claim 7 of the '518 Patent is not infringed, either directly or indirectly, contributorily or otherwise, by LiftWerx USA or by any person in connection with their activities related to LiftWerx USA's up-tower lifting technologies, solutions, products and services.

68. Claim 8 of the '518 Patent is not infringed, either directly or indirectly, contributorily or otherwise, by LiftWerx USA or by any person in connection with their activities related to LiftWerx USA's up-tower lifting technologies, solutions, products and services.

69. This is an exceptional case, and LiftWerx USA is entitled to its costs and attorneys' fees.

## SECOND COUNT FOR RELIEF (DECLARATORY JUDGEMENT OF NONINFRINGEMENT OF THE '578 PATENT

70. LiftWerx USA repeats, re-alleges, and incorporates by reference the preceding paragraphs as if fully set forth herein.

71. An actual and justiciable controversy exists between the Parties with respect to the '578 Patent.

72. LiftWerx USA is entitled to a declaratory judgment that the '578 Patent is not infringed.

73. LiftWerx USA does not directly or indirectly infringe any claims of the '578 Patent, including claims 1-17, literally or under the doctrine of equivalents, by making, using, offering to sell, selling, or importing into the United States any products or services that practice any claims

of the '518 Patent, including LiftWerx USA's up-tower lifting technologies, solutions, products and services.

74.   Without limiting the grounds of non-infringement that will be asserted in this action, and by way of a nonlimiting example only, LiftWerx USA's up-tower lifting technologies, solutions, products, and services do not infringe any claims of the '578 Patent because they do not include main shaft fixtures comprising:

    i.   two or more pressure mandrels;

    ii.   adjustable pressure mandrels with tap shoes;

    iii.   adjustable pressure mandrels with tap shoes where the adjustable pressure mandrels are displaceable between a passive position where the tap shoes are configured to be located at a distance from a surface of a main shaft and an active position where the tap shoes are configured to be engaged with a main shaft;

    iv.   mounting facilities adapted for anchoring a crane on/in a nacelle of a wind turbine;

    v.   at least three radial displaceable pressure mandrels;

    vi.   at least three radial displaceable pressure mandrels located substantially symmetrically around a centre axis of a main shaft;

    vii.   at least three radial displaceable pressure mandrels where the ends of the adjustable pressure mandrels facing the main shaft are furnished with tap shoes;

    viii.   mounting facilities adapted for anchoring a self-hoisting crane on/in a nacelle of a wind turbine;

ix.  mounting facilities adapted for anchoring a self-hoisting crane on/in a nacelle of a wind turbine in that a winch of the self-hoisting crane is located on a ground surface near a foot of the wind turbine;

x.  adjustable pressure mandrels provided with actuators for displacing and retaining tap shoes in a passive position and an active position;

xi.  adjustable pressure mandrels provided with actuators for displacing and retaining tap shoes alternatively in a selectable position between a passive and an active position;

xii.  adjustable pressure mandrels consisting of threaded bolts whose opposing free ends facing the main shaft are furnished with tap shoes;

xiii. two or more adjustable pressure mandrels consisting of threaded bolts whose opposing free ends facing the main shaft are furnished with tap shoes;

xiv. a slideway lining located between opposing sides of a surface of the main shaft and tap shoes;

xv.  a multi-part slide plate cooperating with a main shaft for mounting on the main shaft, where the multi-part slide plate in its mounted position on the main shaft is cooperating with tap shoes;

xvi. a multi-part needle bearing, roller bearing, or ball bearing consisting of a multi-part inner ring fastened to the main shaft, and a therewith cooperating multi-part outer ring consisting of bowed subsegments corresponding to a number of tap shoes, mounted on opposing side of tap shoes facing an inner ring;

xvii. needle rollers, rollers, or balls are arranged between an inner ring and an outer ring, and where means are present for retaining needles, rollers, or balls in position between the inner ring and outer ring;

xviii.    a rotor lock for fixation of a rotor of the wind turbine;

xix. a rotor lock consisting of a flange element, whose bolt circle geometry corresponds to a bolt circle geometry on the rotor, the flange element being fastened at the ends to a first end of two first beam-shaped brackets extending parallel with, and on each side of the main shaft, the beam shaped brackets belonging to the main shaft fixture;

xx. a rotor lock consisting of a flange element, whose bolt circle geometry corresponds to a bolt circle geometry on the rotor, the flange element being fastened at the ends to a first end of two first beam-shaped brackets extending parallel with, and on each side of the main shaft, the beam shaped brackets belonging to the main shaft fixture, and where a second end of the beam-shaped brackets are pivotally mounted with horizontally oriented bolt connections, on other beam-shaped brackets belonging to the main shaft fixture, which are adapted to be anchored on the bottom frame of the nacelle;

xxi. an actuator located nearest a main shaft fixture rotor lock between the bottom frame of a nacelle and an adjacent side of a first beam-shaped bracket facing the bottom frame;

xxii. a crane mounted to a main shaft fixture via mounting facilities of the main shaft fixture; or

xxiii.    mounting facilities adapted for anchoring a lightweight crane on/in a nacelle of a wind turbine.

75.    Claim 1 of the '578 Patent is not infringed, either directly or indirectly, contributorily or otherwise, by LiftWerx USA or by any person in connection with their activities related to LiftWerx USA's up-tower lifting technologies, solutions, products and services.

76.    Claim 2 of the '578 Patent is not infringed, either directly or indirectly, contributorily or otherwise, by LiftWerx USA or by any person in connection with their activities related to LiftWerx USA's up-tower lifting technologies, solutions, products and services.

77.    Claim 3 of the '578 Patent is not infringed, either directly or indirectly, contributorily or otherwise, by LiftWerx USA or by any person in connection with their activities related to LiftWerx USA's up-tower lifting technologies, solutions, products and services.

78.    Claim 4 of the '578 Patent is not infringed, either directly or indirectly, contributorily or otherwise, by LiftWerx USA or by any person in connection with their activities related to LiftWerx USA's up-tower lifting technologies, solutions, products and services.

79.    Claim 5 of the '578 Patent is not infringed, either directly or indirectly, contributorily or otherwise, by LiftWerx USA or by any person in connection with their activities related to LiftWerx USA's up-tower lifting technologies, solutions, products and services.

80.    Claim 6 of the '578 Patent is not infringed, either directly or indirectly, contributorily or otherwise, by LiftWerx USA or by any person in connection with their activities related to LiftWerx USA's up-tower lifting technologies, solutions, products and services.

81.    Claim 7 of the '578 Patent is not infringed, either directly or indirectly, contributorily or otherwise, by LiftWerx USA or by any person in connection with their activities related to LiftWerx USA's up-tower lifting technologies, solutions, products and services.

82. Claim 8 of the '578 Patent is not infringed, either directly or indirectly, contributorily or otherwise, by LiftWerx USA or by any person in connection with their activities related to LiftWerx USA's up-tower lifting technologies, solutions, products and services.

83. Claim 9 of the '578 Patent is not infringed, either directly or indirectly, contributorily or otherwise, by LiftWerx USA or by any person in connection with their activities related to LiftWerx USA's up-tower lifting technologies, solutions, products and services.

84. Claim 10 of the '578 Patent is not infringed, either directly or indirectly, contributorily or otherwise, by LiftWerx USA or by any person in connection with their activities related to LiftWerx USA's up-tower lifting technologies, solutions, products and services.

85. Claim 11 of the '578 Patent is not infringed, either directly or indirectly, contributorily or otherwise, by LiftWerx USA or by any person in connection with their activities related to LiftWerx USA's up-tower lifting technologies, solutions, products and services.

86. Claim 12 of the '578 Patent is not infringed, either directly or indirectly, contributorily or otherwise, by LiftWerx USA or by any person in connection with their activities related to LiftWerx USA's up-tower lifting technologies, solutions, products and services.

87. Claim 13 of the '578 Patent is not infringed, either directly or indirectly, contributorily or otherwise, by LiftWerx USA or by any person in connection with their activities related to LiftWerx USA's up-tower lifting technologies, solutions, products and services.

88. Claim 14 of the '578 Patent is not infringed, either directly or indirectly, contributorily or otherwise, by LiftWerx USA or by any person in connection with their activities related to LiftWerx USA's up-tower lifting technologies, solutions, products and services.

89.    Claim 15 of the '578 Patent is not infringed, either directly or indirectly, contributorily or otherwise, by LiftWerx USA or by any person in connection with their activities related to LiftWerx USA's up-tower lifting technologies, solutions, products and services.

90.    Claim 16 of the '578 Patent is not infringed, either directly or indirectly, contributorily or otherwise, by LiftWerx USA or by any person in connection with their activities related to LiftWerx USA's up-tower lifting technologies, solutions, products and services.

91.    Claim 17 of the '578 Patent is not infringed, either directly or indirectly, contributorily or otherwise, by LiftWerx USA or by any person in connection with their activities related to LiftWerx USA's up-tower lifting technologies, solutions, products and services.

92.    This is an exceptional case, and LiftWerx USA is entitled to its costs and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff LiftWerx USA prays for judgment on the complaint as follows:

a.    Declare that LiftWerx USA does not infringe the '518 Patent;

b.    Declare that the making, using, selling, offering for sale, and/or importation of LiftWerx USA's products or services, including, without limitation, LiftWerx USA's up-tower lifting technologies, solutions, products and services, or substantially similar products do not infringe, directly, indirectly, or otherwise, any claim of the '518 Patent;

c.    Declare that LiftWerx USA does not infringe the '578 Patent;

d.    Declare that the making, using, selling, offering for sale, and/or importation of LiftWerx USA's products or services, including, without limitation, LiftWerx USA's up-tower lifting technologies, solutions, products and services, or substantially similar products do not infringe, directly, indirectly, or otherwise, any claim of the '578 Patent;

22

e.      Order that Liftra and each of its officers, employees, agents, attorneys, and any persons in active concert or participation with them, is restrained and enjoined from prosecuting, or threatening to prosecute, any action against LiftWerx USA claiming that the Patents-in-Suit are infringed, or from representing that LiftWerx USA's products or services, including, without limitation, LiftWerx USA's up-tower lifting technologies, solutions, products and services, or substantially similar products, infringe the Patents-in-Suit;

f.      Declare that this case is exceptional under 35 U.S.C. § 285 and awarding LiftWerx USA its attorneys' fees incurred herein.

g.      Award LiftWerx USA all its costs associated with this case and attorneys fees; and

h.      Such other and further relief as the Court may deem just and appropriate.

Dated: October 23, 2025                               **DECHERT, LLP**

*Of Counsel:*

Noah M. Leibowitz (*pro hac vice* forthcoming)        /s/ Christina Sarchio
Gregory T. Chuebon (*pro hac vice* forthcoming)       Christina Sarchio
DECHERT LLP                                           VA Bar No. 87166
1095 Avenue of the Americas                           DECHERT LLP
New York, NY 10036                                    1900 K Street NW
(212) 698-3500                                        Washington, DC 20006
noah.leibowitz@dechert.com                            (202) 261-3300
greg.chuebon@dechert.com                              christina.sarchio@dechert.com

Michael H. Joshi (*pro hac vice* forthcoming)        *Attorneys for Plaintiff LiftWerx USA Inc.*
DECHERT LLP
45 Fremont Street
26th Floor
San Francisco, CA 94105
(212) 698-3500
michael.joshi@dechert.com